UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

In re:

Kendel R. Howard,                      Case No. 18-22496-beh

           Debtor.                     Chapter 13

**DECISION AND ORDER ON DEBTOR'S ATTORNEYS'
APPLICATION FOR COMPENSATION**

Debtor's counsel filed an application for compensation for the firm's work in this Chapter 13 case on behalf of the debtor Kendel Howard, in the amount of $3,581.50. The debtor, whose case was dismissed before confirmation, objected to a portion of the fees sought.

The Court held a preliminary hearing on Mr. Howard's objection on January 15, 2019, and an evidentiary hearing on Feb. 13, 2019. After considering the case docket, the terms of the fee disclosure, and the testimony and argument at the hearing, the Court concludes that the law firm's services reasonably benefitted the debtor, but warrant some reduction. As more fully explained below, the Court awards a total administrative fee of $2,787.50. Of that amount, counsel received $640 from the debtor prior to filing, so the Court will authorize the Chapter 13 trustee to pay the remaining $2,147.50 to the law firm, before refunding any funds on hand to the debtor.

**BACKGROUND FACTS**

The docket reflects the following activity in Mr. Howard's Chapter 13 case. On March 23, 2018, he filed his petition and schedules. CM-ECF Doc. No. 1. He also filed his plan proposing to pay $362.00 weekly. CM-ECF Doc. No. 2. Because this was his second case filed within a year, his counsel filed a motion to continue the automatic stay, with a supporting affidavit from Mr. Howard. CM-ECF Doc. Nos. 5, 6. The Court granted the motion.

The Court later sustained the Chapter 13 trustee's objection to plan confirmation and required the debtor to provide additional supporting documentation to the trustee, and to file an amended budget and plan. CM-ECF Doc. No. 30. When the debtor failed to comply with those conditions by an extended deadline, the trustee moved to dismiss. CM-ECF Doc. Nos. 37, 40. In the same week, the debtor's mortgage lender moved for relief from stay. CM-ECF Doc. No. 39. The debtor objected to both motions, noting he was "reviewing his financial situation" to consider whether to amend his plan, or surrender the homestead. CM-ECF Doc. Nos. 45, 50. The debtor proposed making his plan payments monthly, instead of weekly. CM-ECF Doc. No. 41. The Court held hearings on both motions, and denied relief from stay with conditions, including allowing a supplemental claim of $10,646.00. CM-ECF Doc. No. 52. The debtor and trustee settled the motion to dismiss, resulting in a proposed amended plan and increased plan payment of $1,668.00 monthly. CM-ECF, Doc. Nos. 55, 62. The order approving that resolution was entered on October 5, 2018, with increased payments to begin in October. When the debtor's October payment wasn't received, the trustee filed an affidavit of default on November 21, 2018. CM-ECF Doc. No. 66.

Anticipating a possible dismissal, counsel submitted an application for administrative expenses (fees) totaling $3,581.50, for services from January 12, 2018 through November 21, 2018. CM-ECF Doc. No. 71. The Court dismissed Mr. Howard's case on December 4, 2018 based on the trustee's uncontested affidavit of default due to lack of plan payments. The dismissal order allowed the trustee to pay Mr. Howard's counsel $1,000 of funds on hand, less any pre-petition fees paid. CM-ECF Doc. No. 74.

The debtor objected to the fee request on December 14, 2018. CM-ECF Doc. No. 76. He disagreed with the amount requested "due to lack of representation and lack of communication on my behalf. No objection was filed to the dismissal order. That's why my chapter 13 case was dismissed. I started my chapter 13 case in April of 2018. I have had a total of three attorneys since." CM-ECF Doc. No. 76.

At the evidentiary hearing, the debtor's concerns continued to be that no objection was lodged to oppose the affidavit of default, his employer continued to deduct trustee payments from his payroll after the case was dismissed, and he was dissatisfied with the level of communication with the Miller & Miller firm, particularly as he dealt with multiple lawyers there.

Attorney Krista Kerr argued on behalf of the law firm. She focused on facts concerning case dismissal. She pointed to Mr. Howard's failure to contact the firm timely, after it alerted him that an affidavit of default had been filed. She asserted that the firm had performed "a substantial amount of work" on Mr. Howard's behalf, and thus should be compensated not the $1,000 provided for in the dismissal order, but the full $3,581.50 identified in the fee application. She offered the testimony of a non-attorney staff supervisor to support the application.

Ms. Kristina Ehnert, vice president of operations and marketing for Miller & Miller, testified for the firm. Ms. Ehnert had reviewed Mr. Howard's file before coming to court, in particular several pieces of correspondence and some telephone records. She testified that standard office procedure, once a motion to dismiss or affidavit of default is filed in a client's case, is to immediately send the client an email about the filing, and ask the client to contact Miller & Miller to resolve it. If the firm does not hear from the client, someone there reaches out via phone within a week (regarding a motion to dismiss). Ms. Ehnert noted that the firm does not always have that same ability on an affidavit of default, given the shorter response deadline. She testified that, with regard to motion to dismiss procedure, once a client is contacted and an objection filed on his or her behalf, the firm will send the client a letter about whatever resolution the Court approves, and describe its requirements. The firm also will provide a copy of the court order.

Ms. Ehnert testified that the firm's internet-based phone system allows her to enter any phone number into the computer system and generate a report of calls made to Miller & Miller from that number. She testified that she generated a report that showed Mr. Howard's phone number made calls to the

firm's main number on November 28 and 29, 2018. November 28 was five days past the deadline to respond to the trustee's affidavit of default in Mr. Howard's case.

Ms. Ehnert testified she was able to listen to a recording of that November 28 call, and that Mr. Howard had called in to speak to an attorney about his case. A scheduler made an appointment for him for November 29. Ms. Ehnert then testified that Mr. Howard called the Miller & Miller office the following day, November 29, to say he was running late for his scheduled appointment. A staffer told Mr. Howard he would have to reschedule. In response, Mr. Howard asked if the new appointment could be set fairly quickly, as he knew his Chapter 13 case had been dismissed. He wanted to discuss his options—whether to refile in Chapter 13 or file a Chapter 7 case. Mr. Howard came to the Miller & Miller offices later on November 30 to meet with an attorney. After discussing options, Mr. Howard rehired the Miller & Miller firm to file a Chapter 7 for him, paying a $100.00 deposit.[1] Mr. Howard did not cross-examine Ms. Ehnert, or testify in contradiction to her testimony about phone calls.

Ms. Ehnert also discussed several exhibits meant to show phone calls between Mr. Howard and members of the firm. These exhibits, like the letters or emails Ms. Ehnert testified were sent to Mr. Howard, were not offered into evidence. The Court therefore does not consider the documents, but only witness testimony, and filings on the docket.[2]

Mr. Howard testified next. He denied receiving correspondence which Attorney Kerr represented she served on him at his present address. Mr. Howard testified that he recalled receiving only a receipt for the $100 he paid Miller & Miller to begin a Chapter 7 case. Mr. Howard testified that he does not

---

[1] Ultimately, Mr. Howard reconsidered, and did not file a Chapter 7 case.

[2] Likewise, the Court does not consider Ms. Ehnert's testimony describing statements made by other members of her firm to Mr. Howard, to the extent those statements constitute hearsay evidence.

always read his mail, though he also said he would read any mail from Miller & Miller or have his children read it to him.

Similarly, Mr. Howard testified that he did not receive letters sent to him from Miller & Miller about his case, via email. He denied receipt even though he verified the currency of his email address, and said he checks his email on his phone. But he told the Court he did not have his phone with him during the hearing. He also told the Court the only emails he received from Miller & Miller were about employee retirements or new staff hires.

Mr. Howard testified primarily about what he regarded as poor communication by members of Miller & Miller. He testified to phone calls that were not returned promptly, though he did not provide specific dates. He described a conversation with Attorney Ruben Castillo, asserting that the lawyer didn't seem to know what was going on with his case, and Mr. Howard expressed frustration. Mr. Howard agreed that there was a period of time when he did not contact the firm about his case. He could not confirm whether he had called Miller & Miller before the deadline to object to the affidavit of default. Mr. Howard was upset that his employer continued to deduct funds from his paycheck even after his Chapter 13 case was dismissed, and said he raised this topic with Attorney Castillo at Miller & Miller.

Both Mr. Howard and Attorney Kerr seem to agree that Mr. Howard's employer deducted some funds from his payroll, for eventual payment to the Chapter 13 trustee, but that the employer did not forward those payments on a regular or timely basis. Mr. Howard provided copies of paystubs to the Court, but they were dated in Spring of 2018, and pre-date the motion to dismiss and affidavit of default period. The paystubs were not offered into evidence. Attorney Kerr argued that, apparently as shown on the Chapter 13 trustee's website,[3] Mr. Howard's employer finally forwarded a payment to the trustee which was received on December 5, 2018. This was past the deadline to object

---

[3] The Court does not have access to the Chapter 13 trustee's website showing accounts for individual debtors.

to the affidavit of default, and was one day after the Court entered the order of dismissal. In Attorney Kerr's words, "if ever there was a case to (provide) an objection to the affidavit of default, this may have been the case, but without that information, Miller & Miller couldn't craft an objection to the affidavit." She clarified that Attorney Castillo works on only Chapter 7 matters for the firm.

Regarding his objection to the fee request, Mr. Howard told the Court it wasn't his position that Miller & Miller didn't work on his case, or did not deserve any fee, but ultimately he filed a Chapter 13 case to get out of debt and now he is "farther in the hole" than when he started, yet the firm is "still asking for more money." In his view, half of the $3,581.50 requested might be reasonable.

In response to questions from the Court, Mr. Howard agreed that the firm prepared an objection in August, 2018 to the trustee's motion to dismiss. He agreed that Attorney Soltis appeared on his behalf at a hearing on that motion, and that she worked with him to reconfigure feasibility of his plan. He agreed that on September 24, 2018, the firm filed an amended Chapter 13 plan and budget on his behalf. Contrary to his earlier testimony, he agreed he "probably" received a letter from Miller & Miller describing the resolution to the motion to dismiss, as he recalls that his monthly plan payments increased. In fact, he testified that he showed the letter to his employer, who asked Mr. Howard where the money (deducted from his paycheck) should be sent. During that conversation, according to Mr. Howard, his employer made no mention of forwarding the payroll deductions to the trustee when he chose to, instead of on a regular monthly basis. Mr. Howard denied seeing a November 19, 2018 "urgent – affidavit of default" email from Miller & Miller. He testified that he has alerts going to his phone for emails, but that he didn't see this one. Mr. Howard testified that he keeps all the emails he receives from Miller & Miller, but received nothing about his case. He testified he did receive Miller & Miller emails (about staffing matters) before and after the correspondence regarding the affidavit of default. He does not check his email junk folder.

## DISCUSSION

Notwithstanding the dismissal of this case, this Court retains jurisdiction to decide the issue before it. *See In re Sweports, Ltd.*, 777 F.3d 364, 367 (7th Cir. 2015) (bankruptcy court has ancillary jurisdiction to take care of "minor loose ends" remaining after a bankruptcy case has been dismissed, including to consider fee applications under 11 U.S.C. § 330 and 28 U.S.C. § 1334(b)). Applications for compensation and reimbursement of expenses under 11 U.S.C. § 330 are core proceedings insofar as they concern the administration of the estate and are proceedings for the allowance of claims against the estate. 28 U.S.C. § 157(b)(2)(A)-(B).

The Code authorizes reasonable compensation for actual, necessary services rendered by an attorney or paraprofessional. 11 U.S.C. § 330(a)(1)(A). That section includes compensation of non-lawyers because their work can reduce the cost of administering a bankruptcy case. If such work is reasonable and necessary, it is compensable. Conversely, clerical tasks, whether performed by a lawyer or staffer, are charged to overhead and are not separately compensable. *In re Nelson*, No. 16-22089, 2017 WL 449581, *2 (Bankr. E.D. Wis. Feb. 1, 2017) (citations omitted). Local Rule 2016 also informs the review. It describes the relevant information required for a fee application, including Rule 2016(a)(2), a "chronological record of each timekeeper's time spent on the case that (A) states the time spent on each service or task in tenths of an hour; . . . ."

In Chapter 13 cases, the Court allows compensation based on a consideration of the benefit and necessity of such services to the debtor. 11 U.S.C. § 330(a)(4)(B). When counsel files an application for fees, the burden of proving that the actual fee is reasonable is on the lawyer or law firm requesting the fee. The Court has an independent duty to review each fee application, whether or not a party has objected to a portion of the fee. 11 U.S.C. § 329(b). It is a fact-specific inquiry, and the determination of compensability is within the sound discretion of the court. *In re Geraci,* 138 F.3d 314, 318–19 (7th Cir. 1998).

The Court therefore will first examine the specific bases for Mr. Howard's objection, and then undertake its own review of the fee application, to determine a reasonable amount of compensation in the circumstances.

**1.   Debtor's objections to the fee application.**

Mr. Howard felt communication with the law firm was unsatisfactory or untimely, was dissatisfied that multiple lawyers worked on his case, and was unhappy his case was dismissed. The Court finds that the debtor and the law firm each bear some responsibility for the communication difficulty here.

   **a. Communication issues and multiple lawyers.**

Mr. Howard testified that he would make calls that were not returned timely, but could not be specific as to when he made those calls. There was no lawyer testimony about communication, and Ms. Ehnert focused on calls around the time of the affidavit of default in late November, 2018. From a review of the invoice and the docket, the Court notes that the law firm filed one motion to extend time to file a required plan amendment, in June, 2018, because the debtor's signature was needed and the firm's invoice shows multiple attempts to contact Mr. Howard in that time period.

Mr. Howard also expressed frustration with, and the Court infers there may have been an incremental increase in the fee due to, the substitution of different counsel at the law firm in the period during which he had to get his amended plan on file. This was after Mr. Howard's first lawyer, Attorney Kruse, had left the firm. Attorney Brown was substituted for Attorney Kruse, but there are no time entries for Attorney Brown. Importantly, any re-learning of Mr. Howard's case by a second or third lawyer at the firm due to employment changes is not a complexity of the case itself.[4] *See, e.g.*, *In re Retter*, Case No.

---

[4] The docket shows that Attorney Nathan Brown was substituted for Attorney Gregory Kruse as attorney of record on April 26, 2018, just one month after Mr. Howard's petition was filed. CM-ECF Doc. No. 20. There are no docket entries, or invoiced services, by Attorney Brown. On November 21, 2018, Attorney Krysta Kerr was substituted in place of Attorney Brown. CM-ECF Doc. No. 70. Attorney Kerr had been providing service on Mr. Howard's case since May, 2018. She also advised at the hearing that Attorney Soltis represented Mr. Howard in resolving his motion to dismiss, but Attorney Soltis ended her employment with Miller & Miller shortly thereafter.

11-25888-GLT, 2014 WL 667675, at *5 (Bankr. W.D. Pa. Feb. 20, 2014) (disallowing fees for work spent by "new timekeepers" acquainting themselves with the debtors' case file, because "the Bankruptcy Code prohibits compensation for duplicative services"). "Getting up to speed" by different counsel could have led to delays in returning Mr. Howard's calls.

In quantifying the debtor's communication complaints (excluding his failure to respond after the Affidavit of Default was filed), the Court has discretion to consider an adjustment to counsel's fee. *See, e.g., In re Nelson*, 424 B.R. 361, 367-68 (Bankr. N.D. Ill. 2009) (comparing services performed with those to be provided under model fee, but reducing by a lump sum because fee agreement was not clear, among other reasons). Mr. Howard's case was a fairly typical Chapter 13 of relatively short duration. Mr. Howard's frustration in dealing with multiple lawyers at one firm is understandable, though "divisions of labor" within law firms and changes in employment are not uncommon. Client calls should be returned promptly by every law firm. Mr. Howard's own attention to the case appears uneven, perhaps reflective of doubt whether Chapter 13 was the right approach.

In the circumstances, the Court concludes that a $350 reduction, equal to one hour of senior associate time, is reasonable to recognize what may have been lawyer re-learning and delayed communication due to the several substitutions of counsel.

### b. Circumstances around case dismissal.

It is undisputed that Mr. Howard did not timely respond to the firm after the Affidavit of Default was filed. His employer's dilatory remittal of funds may have constituted a justifiable basis to oppose the trustee's Affidavit, but this is not a motion for reconsideration under Fed. R. Bankr. P. 9024. Nonetheless, the Court does not find the debtor's testimony credible that he did not receive correspondence from Miller & Miller about his case, sent U.S. mail, first class, when there was no other evidence of mail tampering or missed mail. Likewise, the Court finds it not credible that technology or other reasons would prevent

Mr. Howard from receiving *only* the particular emails from his lawyers alerting him to the affidavit of default and short deadline to try to oppose it. Ms. Ehnert's testimony as to the firm's usual procedure, bolstered by the chronology shown in the fee application and the docket in this case, is the more credible regarding timely communication efforts by the law firm.

The Court therefore does not find a basis to reduce counsel's fees due to the ultimate dismissal of the case.

## 2. The Court's Discretion to Consider Reasonableness of the Fee

As noted, the Court has an independent duty to review each fee application, whether or not a party has objected to a portion of the fee. 11 U.S.C. § 329(b). The determination is within the sound discretion of the Court. *In re Geraci*, 138 F.3d at 318-19.

This district, like a number of others, has adopted a presumed reasonable amount of compensation for attorneys filing Chapter 13 cases, also known as a "no look" fee. *Geraci*, 138 F.3d at 321. At the time Mr. Howard retained the Miller & Miller firm, the presumptively reasonable fee for an attorney representing a debtor in connection with a Chapter 13 bankruptcy case, through at least plan confirmation, was $4,500.[5] The Court's website description of the "no-look" fees lists the legal tasks the Court expects to be included in that presumed reasonable amount, which generally includes plan confirmation and routine post-confirmation services. At the time his case was dismissed, the Court also recognized a presumed reasonable fee of $1,000, to be paid to counsel from funds on hand, if the debtor's case was dismissed before achieving plan confirmation.[6] Mr. Howard's case was dismissed before his amended plan could be confirmed, and at the hearing, he thought counsel should be entitled to "half" what the firm seeks, or about $1,800 in total.

---

[5] *See* "PRESUMPTIVELY REASONABLE ("NO-LOOK") FEES IN CHAPTER 13 CASES," *available at* https://www.wieb.uscourts.gov/no-look-fees.

[6] The Court's form order for fees in the event of dismissal without plan confirmation bears the caveat that fees may not be payable if the case is converted to Chapter 7 rather than dismissed, citing *Harris v. Viegelahn,* 135 S.Ct. 1829 (2015). *See also In re Lettie*, Case No. 18-24510, 2019 WL 960157, at *1 (Bankr. E.D. Wis. Feb. 22, 2019).

### a. The debtor's fee arrangement

When Mr. Howard filed his Chapter 13 case, he included Form B2030, the Disclosure of Compensation of Attorney for Debtor, signed by counsel at Miller & Miller on March 23, 2018. That Disclosure certified that the firm had agreed to accept $4,500, and had received $640 of that amount prior to filing the case. In return for that $4,500 amount, the Disclosure stated:

> I have agreed to render legal service for *all* aspects of the bankruptcy case, including:
> a. Analysis of the debtor's financial situation, and rendering advice to the debtor in determining whether to file a petition in bankruptcy;
> b. Preparation and filing of *any* petition, schedules, statement of affairs and *plan* which may be required;
> c. Representation of the debtor at the meeting of creditors and *confirmation* hearing, and any adjourned hearings thereof;
> d. Negotiations with secured creditors to reduce to market value; exemption planning; preparation and filing of reaffirmation agreements and applications as needed; preparation and filing of motions pursuant to 11 USC 522(f)(2)(A) for avoidance of liens on household goods.

CM-ECF Doc. No. 1, at 60 (emphasis supplied). The Disclosure also stated:

> By agreement with the debtor, the above-disclosed fee does not include the following service: Representation of the debtors in any dischargeability actions, judicial lien avoidances, relief from stay actions or any other adversary proceeding.

*Id.* The Disclosure does not include any hourly rate. The Disclosure expressly states: "I certify that the foregoing is a complete statement of any agreement or arrangement for payment to me for representation of the debtor(s) in this bankruptcy proceeding." *Id.*

But Miller & Miller's fee application, filed shortly before dismissal, gives a conflicting description of the fee arrangement. It states:

> Prior to the filing of this case, the Debtors agreed to pay counsel $4,500.00 for pre-filing advice, petition and schedule preparation and representation at the Section 341 hearing. All other legal services were to be billed between $285.00 to $350.00 per hour for

> the firm's associates and $100.00 to $175.00 per hour for the
> firm's paralegals and support staff. This fee agreement is set out
> upon the original retainer agreement signed by the Debtor.

CM-ECF Doc. No. 71, at 2. The narrative portion of the fee application characterized its request as seeking fees for services including "preparation of file for case filing, court appearance regarding meeting of creditors, preparation and filing of amended Chapter 13 plans, phone calls and emails in attempt to contact Debtor." *Id.* at 3. No retainer agreement was offered into evidence or discussed in testimony. Notably, Mr. Howard did not object to the rates set out in the invoice.

So, the Court is left with two different descriptions of the fee arrangement for Miller & Miller's services in this case. By seeking a total of $3,581.50 at (previously undisclosed) hourly rates, the firm now asks almost $1,000 less than its projected fee to reach confirmation, but $2,581.50 more than what the Court presumes to be a reasonable no-look fee for a case dismissed pre-confirmation. Given these disparities, the invoice and services bear a closer look.

### b. Benefit to Mr. Howard

Miller & Miller's explanation of how its services benefitted Mr. Howard is the bare conclusion that "[t]he services provided were necessary and beneficial toward completion of the case and were performed in a reasonable and customary manner." CM-ECF Doc. No. 71, at 3. Notably, the case did not complete. The major benefit Mr. Howard experienced was the operation of the automatic stay for eight months, and most courts view that benefit to be insufficient to award compensation. "[T]he fact that a debtor derives personal benefit from the delay of collection efforts against him or her due to the bankruptcy case does not constitute a benefit for purposes of awarding compensation." *In re Polishuk*, 258 B.R. 238, 249 (Bankr. N.D. Okla. 2001) (citing *Bachman v. Pelofsky* (*In re Peterson*), 251 B.R. 359, 365 (B.A.P. 8th Cir. 2000) (affirming refusal to award fee where "efforts resulted in no benefit to the debtor under § 330(a)(4)(B), other than to case delay in payment.")). *See also In*

*re Ryan*, 517 B.R. 905, 909–10 (Bankr. E.D. Wis. 2014).  Mr. Howard claims he is now "farther in the hole."

Counsel argues that this Chapter 13 case "involved a substantial amount of work."  The record reflects it may, instead, have been a fairly typical amount of work.  *Compare In re Nelson*, 2017 WL 449581, at *3 n.3, where the debtor was in a Chapter 13 case for eight months, counsel successfully opposed one motion to dismiss, and one motion for relief from stay, filed one amended plan and a request to participate in the MMM program.  In *Nelson*, the court considered the "relatively short duration and light motion practice" and felt fee review was warranted.  Here, there was one motion for relief from stay, one motion to dismiss, and one amended plan.  Clearly Mr. Howard was struggling to manage his payments, and there appear to have been gaps in communication between client and counsel, given at least one request for relief from the deadline to amend the plan.  CM-ECF Doc. No. 34.  As already noted, both the debtor and the firm share responsibility for the communication gaps.

Overall, the Court finds that the firm has demonstrated the bulk of its services were reasonable and necessary to benefit the debtor toward completion of his case.  The law firm's services were moving the debtor toward plan confirmation if possible—the firm filed a plan and amended plan, responded to two motions, and obtained an extension of time for the client.  Whether the client should have been counseled to convert to Chapter 7 before dismissal, or given more time would the client and firm have achieved a confirmable plan, cannot be known.

But several lesser aspects of the fee application merit attention.  First, the narrative portion of the fee application lists a range of hourly rates by which the total fee is calculated, with the highest rate of $350.00.  CM-ECF Doc. No. 71, at 2.  Yet the invoice reflects one timekeeper billed at $375 per hour.  The Court will disallow the $25/hour difference for that timekeeper's eight entries, for a total reduction of $75.00 in the fee sought.  Second, the fee application seeks compensation for "[p]reparation and filing of amended Chapter 13 *plans*," CM-ECF Doc. No. 71, at 3 (emphasis added), but the docket

and counsel's invoice reflect only one amended plan.  Third, the very first invoice entry states: "1/12/2018  Attorney Greg Kruse – Initial Consultation – no charge  .50 hours  $350.00 rate  $175.00 charge."  While the text states "no charge," the invoice total included a $175.00 charge for 30 minutes of lawyer time.  Declining to charge for an initial consultation is customary.  The balance should have been reduced by $175.00.  That charge will be disallowed.

Fourth, a number of entries also include "emailed" or "mailed" or "filed" various items.   The act of mailing or filing is a clerical task, and is not compensable.  *In re Nelson*, 2017 WL 449581, at *3 ("tasks performed by paralegals may be compensated separately only if the tasks are more substantive than clerical work, work this is clerical or secretarial in nature, regardless of who performs it, should be treated as an overhead expense and not separately recoverable.").  "Clerical tasks include 'typing, data entry, checking court dockets or court dates, manually assembling, collating, marking, processing, photocopying, and mailing documents . . . . [F]iling/uploading documents to the docket is a clerical task."  *Id.*  As it has done in the review of other fee applications, the Court will reduce by .10 each entry that included "emailing" or "mailed" or "filed."  While generally the Court might not deduct for a random clerical entry, here there are eight such entries that total $105.00 in lawyer time and $80.00 in law clerk or paralegal time, for a total disallowance of $185.00.

Fifth, one entry billed in hundredths of an hour, instead of tenths of an hour will be disallowed: "03/01/2018 Legal Assistant R. Schmidt – call with client. Discussed paystubs, taxes, 401k information all needed for case.  .09 $100/hr. rate $9.00 charge."  *See* Local Rule 2016(a)(1).

The above reductions based on the Court's own review of the fee application ($75, $175, $185, and $9) total $444.00.

## CONCLUSION

Mr. Howard's case was dismissed before plan confirmation.  His counsel provided a number of reasonable services to move his case toward

confirmation, but substitution of several lawyers likely contributed to delayed communications with him.  Mr. Howard compounded the problems at least late in the case by not responding timely after an Affidavit of Default was filed.  Modest reductions for communication delays, as well as for invoice errors, are appropriate.

The original amount sought in the fee application, $3,581.50, will be reduced by $350 for communication delays.  The Court also will disallow $75 for entries under the wrongly charged $375 hourly rate, $175 for the mis-entered "no charge" initial consult, $185 for clerical tasks, and $9.00 for billing in hundredths of an hour.  Deducting the $640.00 paid by the debtor before his case was filed, this leaves an unpaid balance of $2,147.50.

## ORDER

Accordingly, for the foregoing reasons,

IT IS THEREFORE ORDERED that the Court approves and allows compensation for Miller & Miller in the amount of $2,787.50, of which $2,147.50 remains unpaid, and the Chapter 13 trustee is authorized to disburse $2,147.50 to Miller & Miller as an administrative claim before refunding any remaining funds on hand to the debtor.

Dated: March 22, 2019

By the Court:

Beth E. Hanan
United States Bankruptcy Judge